**In re Gail Aline DICKINSON, Debtor.**

**Bankruptcy No. 81–01369–M.**

United States Bankruptcy Court,
S.D. California.

Nov. 19, 1982.

Stephen L. Garman, Oceanside, Cal., for debtor.

James S. Graham, San Diego, Cal., for respondents.

## MEMORANDUM OPINION

JAMES W. MEYERS, Bankruptcy Judge.

### I

On May 1, 1981, the debtor, Gail Aline Dickinson, filed a petition under Chapter 7

of the United States Bankruptcy Code ("Code").

Listed as unsecured creditors in the debtor's schedules were two doctors who had provided medical services to the debtor, Charles A. Stuart and Paul R. Woody ("doctors").

The debtor obtained a discharge, which was entered on August 10, 1981.

On June 23, 1982, the doctors, through their attorney,[1] filed a complaint in the San Diego Municipal Court, naming the debtor and her attorney as defendants. The complaint was an attempt to enforce a lien which they claimed had survived the bankruptcy proceedings.

As a result of the filing of the state court complaint, the debtor filed this present action on August 12, 1982, requiring the respondents to show cause why they should not be found in contempt. The matter came on for hearing before this Court on October 7, 1982.

### II

### FACTS

Sometime prior to the filing of her Chapter 7 petition, the debtor was involved in an accident which resulted in personal injuries requiring the attention of Doctors Stuart and Woody. After rendering substantial care to the debtor, she owed them $2,113.50. Payment from the debtor was not forthcoming, so the doctors agreed to look toward any proceeds resulting from the personal injury action the debtor instituted. In furtherance of this, on February 25, 1981, the debtor signed two documents, one in favor of each doctor, entitled "Medical Reports and Doctor's Lien," purporting to grant liens in any settlement, judgment or verdict, she may receive as a result of her personal injury action.

On May 1, 1982, the debtor filed her petition for relief under Chapter 7 of the Code. Prior to the time of filing, the debtor informed the attorney representing her

---

1. Collectively referred to as "respondents."

in the bankruptcy about the personal injury action, and the possibility of the doctors' claims against any proceeds resulting therefrom. In the opinion of her attorney, the debtor's chances of recovery were remote and any liens upon the potential recovery were invalid. In light of this, the doctors were listed on the debtor's schedules as unsecured creditors, and no action regarding the liens was taken during the pendency of the bankruptcy proceedings.

On August 10, 1981, the debtor's discharge was entered.

The debtor's personal injury action was eventually settled resulting in a sum of money being paid to the debtor. Upon learning of the settlement, the doctors attempted to enforce their purported liens on the proceeds. This attempt culminated in the filing of a complaint against the debtor in the San Diego Municipal Court. The filing of the state court action resulted in the debtor instituting the present action.

## III

## DISCUSSION

In determining whether the respondents are in contempt of court, it is first necessary to establish the status of the alleged liens under California law.

■ California recognizes that liens may be created by contract of the parties. Cal. Civ.Code § 2881(1). Such a lien may be upon property not yet acquired by the party agreeing to give the lien. Cal.Civ.Code § 2883. The lien would then attach at the time an interest in the property is acquired. *Kreling v. Kreling,* 118 Cal. 413, 50 P. 546 (1897); *Garter v. Metzdorf Associates,* 217 Cal.App.2d 812, 32 Cal.Rptr. 113 (1963).

This is not an uncommon arrangement with attorneys and their clients, and is indeed often the only way people with meritorious claims can obtain legal representation. *Cetenko v. United California Bank,* 30 Cal.3d 528, 536, 179 Cal.Rptr. 902, 638 P.2d 1299 (1982). An attorney will agree to represent a client in a dispute, and to secure payment, will accept a lien on any proceeds which may thereby be generated.

Most typically, the party being granted an interest in the proceeds is the client's attorney, but this need not be the only scenario. In *Nicolletti v. Lizzoli,* 124 Cal. App.3d 361, 177 Cal.Rptr. 685 (1981), the party receiving the lien was a physician. That physician was allowed to enforce his lien on the proceeds from a settlement, even though his interest was not perfected. The court reasoned that the services provided by medical personnel are so essential to society, that to require perfection to enforce this lien would eventually result in doctors ceasing to perform their services until they were paid. *Id.* at 369–70, 177 Cal.Rptr. 685.

■ In the present case, the debtor signed two documents entitled "Medical Reports and Doctor's Lien." The intended purpose of these documents was twofold. First, to authorize the doctors to report to the debtor's attorney on her condition; second, to grant a lien in favor of the doctors upon any proceeds resulting from the personal injury action. Of this, there can be no doubt, for the documents are captioned "Doctor's Lien," and contained the following language, "[a]nd I hereby further give a lien on my case to said doctor against any and all proceeds of any settlement, judgment or verdict . . . ." These documents were then signed by the debtor and the attorney representing her in the personal injury action. No clearer language could have been used to create a contractual lien in the proceeds of the personal injury action. Therefore, this Court holds that the doctors had valid, enforceable liens under California law.

Having a pre-petition lien in bankruptcy does not always promise a creditor payment. The Code provides for avoidance of certain liens.[2] This Court need not, however, address the issue of the propriety of avoiding the liens in this case. This is

---

**2.** The sections which allow certain specified liens to be avoided are 11 U.S.C. §§ 506(d), 544, 545, 547, 548, 549 and 724(a).

because no such action was taken during the bankruptcy proceeding. The debtor's attorney handling the bankruptcy was aware of the existence of the liens, but chose not to take any action since, in his opinion, the debtor would not recover and that they were, in any event, invalid. Upon his advice, the doctors were listed as unsecured creditors only.

■ The granting of a discharge operates as a permanent injunction against any attempt to collect or recover on a debt as a personal liability of the debtor, or from property of the debtor.[3] 11 U.S.C. § 524(a); 3 *Collier on Bankruptcy,* ¶ 524.01 at 524–4. Any post-discharge attempt to so collect is properly a basis for contempt proceedings. *See In re Batla,* 12 B.R. 397, 8 B.C.D. 26 (N.Ga.1981). This is to ensure an effective discharge and is in keeping with the "fresh start" philosophy which permeates the Code. However, this injunction, while strong and far-reaching, is not without its limits. A creditor is enjoined from attempting to recover on a debt that has been discharged, but is not prevented from enforcement of a valid pre-petition lien.

■ Applying this to the present situation, since the doctors were listed as unsecured creditors, the permanent injunction would act to prevent them from pursuing any unsecured claim against the debtor. But, such is not the case here, for it has already been determined that they were granted valid liens in any proceeds from the debtor's personal injury action.

It is a long-established principle that unless avoided in the bankruptcy proceeding, valid liens will be preserved notwithstanding the discharge of the debtor. *See Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). This rule has not diminished with age. Section 522(c)(2) of the Code is the statutory recognition of this principle and it has been reaffirmed many times. *See In re Cornist,* 7 B.R. 118 (S.Cal.

1980); *In re Weathers, supra,* 15 B.R. 945, 8 B.C.D. 524; *In re Fitzgerald,* 20 B.R. 27 (N.N.Y.1982); *see also,* 3 *Collier on Bankruptcy,* ¶ 522.27 at 522–65 (15th ed.).

The legislative history of section 522(c) leaves no room for question as to what was intended:

> The bankruptcy discharge will not prevent enforcement of valid liens. The rule of Long v. Bullard, 117 U.S. 617 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as exempt property.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76; *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5862, 6317.

A debtor's personal liability is extinguished upon a discharge, but a creditor's right to proceed against the property is not. It follows then, that when the automatic stay imposed by 11 U.S.C. § 362(a) is terminated, a creditor with a valid lien may proceed against the collateral. *In re Cornist, supra,* 7 B.R. at 120–21; *In re Weathers, supra,* 15 B.R. at 951, 8 B.C.D. at 528. The granting of a discharge to a debtor will serve to terminate the automatic stay. 11 U.S.C. § 362(c)(2)(C). The debtor's discharge was entered on August 10, 1981. Consequently, since they commenced their action in state court on June 23, 1982, which is after the petition, the respondents were within the law when they pursued this matter in state court. As such, this Court cannot find that they violated the permanent injunction of 11 U.S.C. § 524(a), and it is held that they are not in contempt of any order issued by this Court.

## IV

## CONCLUSION

The doctors had valid, enforceable liens under California law which were not avoided during the bankruptcy proceeding.

---

**3.** The injunction in 11 U.S.C. § 524(a) against efforts to collect from "property of the debtor" does not proscribe attempts to enforce valid liens. This language was included to prevent post-discharge harassment of debtors and give "backbone to the discharge of in personam liability and the discharge of *avoided* in rem liability." (emphasis added). *In re Weathers,* 15 B.R. 945, 951, 8 B.C.D. 524, 527 (Kan.1981).

When the automatic stay of 11 U.S.C. § 362(a) was terminated upon the granting of the discharge, the doctors' rights to proceed against the property matured and the respondents are not in contempt of this Court for so proceeding.

This opinion will constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752. The attorney for the respondents will prepare and file an appropriate proposed order within ten days of the filing of this opinion.